**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                              Case No.  06-31323

ANNEDA (NMN) SHEPHERD

       Debtor

**MEMORANDUM ON OBJECTION TO CONFIRMATION
OF CHAPTER 13 PLAN**

**APPEARANCES:**    ALAN C. LEE, ESQ.
                       Post Office Box 1357
                       Morristown, Tennessee  37816-1357
                       Attorney for the Debtor

                      WILSON & ASSOCIATES, PLLC
                       Timothy F. Frost, Esq.
                       Aaron Squyres, Esq.
                       109 Northshore Drive
                       Suite 302
                       Knoxville, Tennessee  37919
                       Attorneys for EMC Mortgage Corporation

                      GWENDOLYN M. KERNEY, ESQ.
                       Post Office Box 228
                       Knoxville, Tennessee  37901-0227
                       Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation filed by EMC Mortgage Corporation (EMC Mortgage) on July 25, 2006, objecting to confirmation of the Debtor's proposed Chapter 13 plan filed on June 20, 2006. A preliminary hearing was held on August 30, 2006, and a trial was set for October 11, 2006. Following the preliminary hearing, the court entered an Order on September 11, 2006, providing a briefing schedule and defining the issue to be resolved as "whether 11 U.S.C. § 101(13A)(A), as added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective on October 17, 2005, prohibits a debtor, pursuant to 11 U.S.C. § 1322(b)(2), from modifying a secured claim that is secured only by a security interest in a mobile home that is the debtor's principal place of residence and which is located on real property in which the debtor has no ownership interest and/or against which the creditor has no perfected lien." At the October 11, 2006 trial, the parties advised the court that an evidentiary hearing was not necessary, and the matter could be decided on stipulations and briefs.

The parties filed Joint Stipulations of Facts and Documents Filed by EMC Mortgage Corporation and Debtor (Joint Stipulations) on October 2, 2006, incorporating therein the following stipulated exhibits: (1) documents evidencing the Debtor's purchase of a 1997 Buccaneer Clipper mobile home (Mobile Home) on February 12, 1996, including the Contract for Sale and the Retail Installment Contract between the Debtor and Riden Properties, Inc. d/b/a Maple Ridge Place, along with its Notice of Assignment to United Companies Funding, Inc.; (2) the proof of claim filed by EMC Mortgage on July 11, 2006; (3) lien information relative to the Mobile Home on record with the State of Tennessee; and (4) a Summons to Recover Personal Property issued on April 11, 2006, by the General Sessions Court for Cocke County, Tennessee, whereby the Plaintiff, Bank One

2

Pasadena, CA, as Trustee pursuant to the applicable pooling and servicing agreement and assignment of all servicing rights from UCFC Funding Corporation, by EMC Mortgage Corporation as Attorney in Fact, sought to obtain possession from the Defendant, the Debtor, of the Mobile Home and all fixtures, furniture, and appliances with an alleged value of $16,409.02.  The Debtors' Brief in Reply to EMC Mortgage Corporation's Objection to Confirmation was filed on October 3, 2006.  The Brief of Secured Creditor, EMC Mortgage Corporation, in Response to the Court's Order of September 11, 2006, was filed on October 4, 2006.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(L).  (2006).

# I

The following facts, which are set forth in the Joint Stipulations, are not in dispute.  The Debtor filed the Voluntary Petition commencing her bankruptcy case under Chapter 13 of the Bankruptcy Code on June 20, 2006.  On Schedule D of her statements and schedules, the Debtor lists EMC Mortgage as a secured creditor, holding a claim totaling $41,500.00, of which $16,000.00 is stated as secured by the value of the Mobile Home and $25,500.00 is stated as unsecured.  On July 11, 2006, EMC Mortgage filed a claim in the Debtor's case in the amount of $41,711.63.  The claim, which includes an arrearage of $4,338.40, is filed as fully secured by the Mobile Home.  The Debtor's Chapter 13 plan (Plan) proposes weekly payments of $110.00 for 60 months, plus payment to the Chapter 13 Trustee of all tax refunds in excess of $500.00, resulting in a projected dividend of 5-20% to nonpriority unsecured creditors.  With respect to EMC Mortgage's secured claim, the

Plan proposes a cramdown value of $16,000.00 for the Mobile Home, to be paid by the Chapter 13 Trustee in monthly installments of $400.00 plus 8% interest. The Mobile Home is the Debtor's principal place of residence and is located upon real property in which she holds no ownership interest and against which EMC Mortgage does not have a lien.

As articulated in the September 11, 2006 scheduling Order, EMC Mortgage's Objection to Confirmation is in the alternative: "1) that based on the language of 11 U.S.C. § 101(13A)(A) the debtor is prohibited from modifying [EMC Mortgage's] secured claim under 11 U.S.C. § 1322(b)(2), or (2) if the debtor is allowed to modify [EMC Mortgage's] secured claim, then, pursuant to 11 U.S.C. § 1325(a)(5)(A)(ii), the value of the claim and the interest rate paid on the claim should be greater than the amounts proposed in the debtor's plan."

## II

The Bankruptcy Code provides debtors with three options for dealing with allowed secured claims: (1) obtain approval of the plan from the secured creditor; (2) "cramdown" the creditor's claim; or (3) surrender the collateral securing the creditor's claim. *See* 11 U.S.C. § 1325(a)(5) (2005). Section 1322(b) sets forth certain permissive provisions that a debtor "may" include in a Chapter 13 Plan. *See* 11 U.S.C. § 1322(b) (2005). As material to this contested matter, § 1322(b)(2) provides that a plan may " modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C. § 1322(b)(2). Any party in interest that does not agree with its treatment may object to confirmation

of the plan pursuant to 11 U.S.C. § 1324 (2005). Creditors who do not object are deemed to have accepted a plan. *In re Basham*, 167 B.R. 903, 904 (Bankr. W.D. Mo. 1994).

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which became effective for all cases filed on or after October 17, 2005, the Bankruptcy Code did not define the term "debtor's principal residence," and the language of § 1322(b)(2) limited its application to creditors holding a security interest upon "real property" that was also the "debtor's principal residence." 11 U.S.C. § 1322(b)(2) (2004). Under pre-BAPCPA law, there were five requirements to be satisfied in order for the home mortgage anti-modification exception to apply: (1) the claim was secured; (2) by a security interest; (3) in the debtor's principal residence; (4) consisting of real property; and (5) the claim was not secured by any other collateral. *In re Pedigo*, 283 B.R. 493, 496 (Bankr. E.D. Tenn. 2002). Accordingly, if the mortgage obligation did not include the real property upon which a debtor's principal residence was situated, or if the mortgage obligation included anything other than the real property, the claim could be modified and was subject to cramdown.

Under BAPCPA, however, "debtor's principal residence" is a defined term:

(13A) The term "debtor's principal residence" –

    (A) means a residential structure, including incidental property[1], without regard to whether that structure is attached to real property; and

    (B) includes an individual condominium or co-operative unit, a mobile or manufactured home, or trailer.

11 U.S.C. § 101(13A).

    The sole issue for determination in this contested matter is whether the newly codified definition of "debtor's principal residence" applies to a mobile home that is located upon real property in which the debtor possesses no ownership interest and against which the creditor has no lien. To phrase the question another way, is the anti-modification provision of § 1322(b)(2) applicable to a mobile home irrespective of its attachment to the real property on which it may be situated? The court finds that it is.

### III

    "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*,

---

[1] The Bankruptcy Code, as revised by BAPCPA, now defines "incidental property" as follows:

(27B) The term "incidental property" means, with respect to a debtor's principal residence –

    (A) property commonly conveyed with a principal residence in the area where the real property is located;

    (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

    (C) all replacements or additions.

11 U.S.C. § 101(27B) (2005).

109 S. Ct. 1026, 1030 (1989).  The Supreme Court "ha[s] stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last:  'judicial inquiry is complete.'"  *Conn. Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992) (quoting *Rubin v. United States*, 101 S. Ct. 698, 701 (1981)).

> "The starting point in any case involving the meaning of a statute [] is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210, 99 S. Ct. 1067, 1073, 59 L. Ed. 2d 261 (1979); *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998).  A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979). "In construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S. Ct. 638, 645, 83 L. Ed. 2d 556 (1985), quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985).  "If the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998), quoting *United States v. Ron Pair Entrs., Inc.*, 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).

*United States v. Plavcak*, 411 F.3d 655, 660-61 (6th Cir. 2005).

On the other hand, "[a] court should look beyond the language of the statute . . . when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress."  *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999).  "[W]hen two statutes conflict with one another, and one of them 'deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails[; similarly,] . . . when 'two statutes are irreconcilable, the later enactment prevails.'"  *Son v. Coal Equity, Inc.*, 122 Fed. Appx. 797, 800 (6th

Cir. 2004) (quoting *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky. 2003)). Nevertheless, "a later statute will not be held to have implicitly repealed an earlier statute unless there is a clear repugnancy between the two. A simple lack of harmony between the statutes will not suffice; when two statutes conflict to some degree, they should be read together to give effect to each if that can be done without damage to their sense and purpose." *Muller v. Lujan*, 928 F.2d 207, 211 (6th Cir. 1991).

> General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling. . . . Where the special statute is later it will be regarded as an exception to or qualification of the prior general one. . . . .

*N.A.A.C.P. v. Detroit Police Officers Ass'n*, 900 F.2d 903, 912 (6th Cir. 1990) (quoting SUTHERLAND STATUTORY CONSTRUCTION § 51.05, at 499-500 (N. Singer ed. 1984) (footnote omitted)).

Even a cursory reading of § 1322(b)(2) and § 101(13A) evidences that these statutes are in conflict and cannot be reconciled as written. Section 1322(b)(2) expressly provides that a debtor may not modify a claim "secured only by a security interest in real property that is the debtor's principal residence," while § 101(13A) expressly provides that a debtor's principal residence means the residential structure, including a mobile home, "without regard to whether that structure is attached to real property[.]" An attempt to read these statutes in concert provides the following result:

> [T]he plan may – . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's *residential structure, [such as] . . . a mobile . . . home, . . . [which] include[s]*

8

> *incidental property, without regard to whether that structure is attached to real property*[.]

11 U.S.C. § 1322(b)(2), incorporating in italics 11 U.S.C. § 101(13A)(A), (B). Clearly, reading the newly adopted § 101(13A) definition of "debtor's principal residence" in conjunction with § 1322(b)(2) results in an absurdity, because § 1322(b)(2) must now be construed to provide that a debtor may not modify the claims of a creditor holding a security interest in the debtor's residential structure, including a condominium, cooperative, mobile home, or trailer, irrespective of whether it is attached to the real property, but only if the security interest includes the real property.[2] While this court cannot speak for others, it finds that it cannot apply the anti-modification provision of § 1322(b)(2) when construing that section literally in conjunction with § 101(13A).

Because the statutes cannot logically be read together, the court must look beyond the wording of the statutes to the legislative history and other canons of statutory interpretation for guidance. The legislative history for BAPCPA as a whole is limited, at best, and § 101(13A) proves no different, in that the court only found one substantive reference to the "debtor's principal residence" definition in the House of Representatives' Judiciary Committee Report dated April 8, 2005. The Report, in the "Section-by-Section Analysis and Discussion," breaks down BAPCPA as proposed in Senate bill 256. Section 306 is included within the section entitled "Title III: Discouraging Bankruptcy Abuse," and the synopsis states the following as material to this issue:

---

[2] Attachment is a key word because, under the laws of many states, including Tennessee, structures such as mobile homes and trailers are generally registered as motor vehicles, and "whether a mobile home is considered a motor vehicle and therefore personal property or a fixture attached to real property depends upon how the mobile home is actually used." *In re Northern*, 294 B.R. 821, 828 (Bankr. E.D. Tenn. 2003) (quoting *In re Owens*, 36 B.R. 661, 663 (Bankr. M.D. Tenn. 1984). Under the definition of § 101(13A), it becomes inconsequential whether a debtor's mobile home becomes affixed or attached to the real property upon which it is located for the purposes of whether its constitutes the "debtor's principal residence."

9

> *Sec. 306. Giving Secured Creditors Fair Treatment in Chapter 13. . . .* Section (c)(1) amends section 101 of the Bankruptcy Code to define the term "debtor's principal residence" as a residential structure (including incidental property) without regard to whether or not such structure is attached to real property. The term includes an individual condominium or cooperative unit as well as a mobile home or manufactured home, or a trailer.

H.R. REP. 109-31, Pt. 1, at 72, 109th Cong., 1st Sess. (2005). This brief reference to the meaning of the term "debtor's principal residence" does, however, provide assistance as it clearly indicates that Congress intended to broaden the scope of what constitutes a "debtor's principal residence" beyond the "real property" anti-modification limitations of § 1322(b)(2) to include a freestanding "residential structure" such as a mobile home, manufactured home, or trailer.

A search throughout the Bankruptcy Code for the precise term "debtor's principal residence" yields only six instances of its use. The first two occurrences of "debtor's principal residence" are found in the newly adopted definitions of "debtor's principal residence" and "incidental property" located at 11 U.S.C. § 101(13A) and (27B), respectively. The term "debtor's principal residence" is also found at 11 U.S.C. § 1123(b)(5) (2005), which mirrors the language of § 1322(b)(2) with respect to its application to a Chapter 11 plan. The final locations of the phrase "debtor's principal residence" are all found within § 1322: (1) subsection (b)(2), which is the subject of this contested matter; (2) subsection (c)(1), which, notwithstanding subsection (b)(2), allows for the cure of any arrearage on a mortgage obligation over the life of the plan; and (3) subsection (c)(2), which allows modification of a mortgage obligation for which the original final payment is due during the life of the plan.

10

Based upon the very limited and specific references to "debtor's principal residence," it seems apparent that Congress intended for this definition as set forth in § 101(13A) to apply specifically to the anti-modification provisions concerning home mortgages, thereby broadening the scope of § 1322(b)(2) to prohibit modification of obligations owed to creditors holding security interests in residential structures such as condominiums and mobile homes, despite the fact that a debtor does not own, and the creditor does not hold a lien upon, the real property upon which such structures are located.

Section 101(13A) was enacted to extend application of the anti-modification provision of § 1322(b)(2) beyond its "real property" limitation to include "residential structure[s]" such as condominiums, cooperatives, mobile homes, or trailers. Whether the creditor does nor does not hold a security interest in the real property upon which the structure might be located is immaterial. To hold otherwise would render § 101(13A) meaningless surplusage and would serve to judicially write it out of the provisions of BAPCPA. This is not the function of the bankruptcy court.

In summary, if the Debtor is to retain possession of the Mobile Home, she cannot modify EMC Mortgage's secured claim, as that claim is subject to the anti-modification provision of § 1322(b)(2). Accordingly, EMC Mortgage's Objection to Confirmation will be sustained, and confirmation of the Debtor's Plan will be denied. The court will, however, allow the Debtor ten days to move for conversion or dismissal of her Chapter 13 case or to file a modified plan providing for the treatment of EMC Mortgage's secured claim in the manner required by 11 U.S.C. §

1322(b)(5) (2005).[3]  This case will be set on a motion docket to consider any modified plan filed by the Debtor.

An Order consistent with this Memorandum will be entered.

FILED:   November 3, 2006

>BY THE COURT
>
>*/S/ RICHARD STAIR, JR.*
>
>RICHARD STAIR, JR.
>UNITED STATES BANKRUPTCY JUDGE

---

[3] This section provides:

> (b) [T]he plan may –
>
>    . . . .
>
>    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b)(5).  Pursuant to the Retail Installment Contract executed by the Debtor upon her purchase of the Mobile Home, her monthly payments commenced on March 1, 1997, and end on February 1, 2027.